861 F.2d 185
 50 Ed. Law Rep. 65
 CITY OF AMES, IOWA, Appellee,
v.
HERITAGE COMMUNICATIONS, INC.; Heritage Cablevision, Inc.;
Ames Cablevision, Appellants,
Newton Cablevision, Inc.; Indianola Cablevision, Inc.; and
Central Iowa Cablevision Associates L.P.
 No. 88-1436.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 19, 1988.
Decided Nov. 9, 1988.
 
 Hugh J. Cain, Des Moines, Iowa, for appellants.
 John R. Klaus, Ames, Iowa, for appellee.
 Before HEANEY and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 This case presents the question of whether the City of Ames (City) may tax the appellants' provision of cable services to a university community where the appellants make use of City thoroughfares and facilities to carry the signal. We affirm the lower court's decision that, given their use of public property and the customers involved, these appellants are subject to the City's tax.
 
 FACTS
 
 2
 The City has granted an exclusive franchise to Ames Cablevision, Inc. (Ames Cablevision) to provide cable television services "within the city." Ames Cablevision pays a franchise fee of 3% of its revenues generated from basic cable service within the City's jurisdiction.
 
 
 3
 Ames Cablevision is a subsidiary of Heritage Communications, Inc. (Heritage).[1] The magistrate below found that throughout Ames Cablevision's solicitation and use of the franchise, Heritage acted on Ames Cablevision's behalf and Heritage acted as if the franchise belonged to itself, the parent. Mem.Op. and Order 2-5, 8-9, Civ. No. 86-90-B (D.S.Ia., January 11, 1988). Ames Cablevision's signals are received at a location it shares with the other Heritage subsidiary involved in this case. The signals are routed through city streets and across city easements to Ames Cablevision's customers.
 
 
 4
 Iowa State University (ISU) is located entirely within the City. In 1985, another Heritage subsidiary obtained the permission of ISU officials to provide cable service to campus residence halls. This subsidiary receives its signal from Ames Cablevision lines that run through the City on city property. Heritage informed the City that revenues generated from campus residence halls would not be included for the purpose of calculating the franchise fee. The City brought suit against Heritage, Ames Cablevision and the subsidiary serving students at ISU to collect fees based on revenues generated from campus residence halls.
 
 
 5
 The City's suit raised two issues: First, whether the City had jurisdiction to claim a fee on the revenues generated in the residence halls; and second, whether all the business entities comprised a single "cable operator" within the meaning of the Cable Communications Policy Act of 1984, 47 U.S.C. Sec. 521 et seq. (Act).
 
 
 6
 The district court granted the City's motion for summary judgment on the first issue, holding that the City had sufficient jurisdiction. Ruling on Motions for Summary Judgment (March 19, 1987). The court denied the City's summary judgment motion on the second point, deciding that there was a genuine issue of material fact whether or not the appellants comprised a single cable operator. The parties consented to proceed before a magistrate on this issue. After a full presentation of the evidence, the magistrate found that the appellants were a single cable operator within the Act.
 
 DISCUSSION
 I. Jurisdiction
 
 7
 The district court held that the City could tax the services the appellants delivered to the students. The court noted that title to the university land was held by the State and that the Board of Regents has the sole authority to grant easements over university land. Nevertheless, the court reasoned, the City could tax these revenues because Heritage's subsidiary uses city property to transmit the signal.
 
 
 8
 We agree with the district court's analysis. The City is imposing a fee for the use of its easements, not the Regents' easements. The cable service is only provided to those occupants of the residence halls who request and pay for the service. These students are members of the City community. The service is not provided to the university, nor is it used as part of ISU's curriculum. Mem.Op. at 6-8. The service is provided "within the city" and the cable operator uses city streets and city property to bring cable service to those students who request it. We agree that in this case, where the cable operator uses city facilities to run its wires and carry its signals to residence halls for the use of students, the City may collect its fee.
 
 II. Relation of the Business Entities
 
 9
 The Cable Communications Policy Act requires cable operators to obtain franchises. 47 U.S.C. Sec. 541(b). The franchising authority may assess a fee up to 5 percent of a cable system's gross revenues each year. 47 U.S.C. Sec. 542(a). The magistrate decided that the appellants were operating a single cable system within the meaning of the Act.
 
 
 10
 Under the Act, a "cable operator" is defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system." 47 U.S.C. Sec. 522(4). A "cable system," is defined as "a facility, consisting of closed transmission paths and associated generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community." 47 U.S.C. Sec. 522(6).
 
 
 11
 There was substantial evidence to support the magistrate's conclusion that the appellants were a single operator and a single system. Heritage negotiated with the City for the physical facilities to carry Ames Cablevision's cable service. Heritage and Ames Cablevision were co-signatories for the rental of city transmission line poles. Heritage executed a declaration of its responsibility for all of the "obligations and liabilities" of Ames Cablevision. Heritage paid the costs of an election held for voter approval of the City's franchise to Ames Cablevision. Heritage negotiated on behalf of Ames Cablevision for changes in the City's cable regulations. Upon the awarding of the franchise to Ames Cablevision, Heritage's President wrote the City enclosing "our unconditional acceptance of the cable television franchise...." Accounting matters were also handled by Heritage. Mem.Op. at 2-5.
 
 
 12
 Heritage has a similar relationship with the subsidiary that contracted with ISU. The agreement with ISU was negotiated by Heritage. The signals are initially received at offices occupied by Ames Cablevision and this subsidiary. The signals are then routed to the residence halls by way of the city-owned easements rented by Ames Cablevision. Evidence before the court indicated that Heritage has a practice of using multiple corporations for tax and financing advantages. It was Heritage's decision to create this separate subsidiary for ISU service, and Heritage proceeded to inform the City that it would not pay franchise fees for this service. Mem.Op. at 6-10.
 
 
 13
 On these facts, we cannot say that the magistrate's decision was clearly erroneous. We affirm the judgments of the lower courts. The current service offered to ISU students is delivered through the joint efforts of related companies who form a single cable operator and system, and who use city property to provide the service.
 
 
 
 [1]
 Financing for the system's installation was provided by a limited partnership called Central Iowa Cablevision Associates, composed of Ames Cablevision, Newton Cablevision Inc. and Indianola Cablevision Inc. None of these entities currently have any ownership or control over Ames Cablevision